## Commonwealth v. Tedesco

*Francis Patrono,* for prosecutrix.
*David H. Weiner,* for defendant.

ACHESON, J., April 23, 1945.—This case comes before the court upon the petition of the defendant, praying the court to vacate an order of support heretofore made.

To get a correct understanding of the case it will be proper to state the facts. Sam Tedesco, defendant, is the husband of one Rose Tedesco, and is the father of two children born to Rose Tedesco, one, Brenda, aged about 3½ years, and the other, Josephine, aged about 4½ years. Defendant, for some considerable time prior to November 15, 1944, was employed in

the State of New Jersey. His wife, Rose Tedesco, was, on November 15, 1944, and for sometime prior thereto, living with the two children above named at the home of Rose Tedesco's parents, Antonio Janflone and Theresa Janflone. On April 26, 1944, the Grand Jury of Washington County, then in session, returned a true bill to an indictment against Rose Tedesco charging that on February 25, 1944, the said Rose Tedesco concealed the death of a male bastard child, born to her on February 25, 1944. This indictment was entered to no. 67, May sessions, 1944, Q. S., and on May 10, 1944, was certified to the oyer and terminer court and docketed to no. 3, May term, 1944. This case was continued from time to time and finally listed for trial at the November 1944 term of the quarter sessions court.

On August 24, 1944, the Grand Jury of Washington County, then in session, returned a true bill to an indictment against the said Rose Tedesco in which the said Rose Tedesco was charged with involuntary manslaughter of the child above referred to. This case is docketed to no. 202, August sessions, 1944, in the quarter sessions court of this county. This case was also continued to the November 1944 term beginning on November 13, 1944.

On November 4, 1944, George T. Cummins, District Attorney of Washington County, notified the above named Sam Tedesco by letter that the latter's presence was "demanded in the case of the Commonwealth v. Tedesco at the court house in Washington, Pennsylvania, on November 14, 1944, at 9:30." The letter also requested defendant to notify the district attorney's office promptly that defendant would be present at that time "so that it will not be necessary for the court to issue a subpoena."

Walter J. Marm, a member of the State police, was directed by one of the assistant district attorneys, to go to defendant's place of abode in the State of New

Jersey, and notify defendant that if he came to Washington as a witness on behalf of the Commonwealth in the case against Rose Tedesco, he, defendant, would not be arrested on any charge while here in Washington County. In accordance with the representations made to him by Mr. Marm, and in compliance with the written order and direction sent to him by the district attorney, defendant came to Washington as a witness in the cases against Rose Tedesco, above referred to. He arrived in Washington on November 14, 1944. The case against Rose Tedesco, at no. 67, May term, 1944, Q. S. (no. 3, May term, 1944, O. & T.) in which she was charged with concealing the death of her bastard child, and to which she entered a plea of not guilty, was called for trial on Monday, November 13, 1944. This trial proceeded up to and including a part of November 15, 1944, at which time defendant withdrew her plea of not guilty and entered a plea of nolo contendere. The trial judge then fixed Monday, November 20, 1944, for the said Rose Tedesco to appear in court for sentence on her plea of nolo contendere to the charge embraced in that indictment.

At the time the said Rose Tedesco changed her plea to nolo contendere, Sam Tedesco, defendant in this case, was in the court room. He had been arrested on November 15th on a warrant issued by John F. Carmichael, Alderman of the City of Washington, in which information Sam Tedesco is charged with desertion and nonsupport of his wife, Rose Tedesco, and their two minor children who have been hereinbefore named. After the time for the sentencing of Rose Tedesco had been fixed, the said Sam Tedesco was called to the bar on the request of the district attorney that he be discharged from custody and permitted to return to his place of abode in the State of New Jersey. Counsel for Rose Tedesco who had advised the prosecution against Sam Tedesco on the nonsupport charge, ob-

jected to the discharge of Sam Tedesco. An extended discussion was entered into between counsel in the presence of the trial judge. The prosecuting officer contended that defendant, Sam Tedesco, was immune from prosecution by reason of the provisions of the Act of June 23, 1941, P. L. 147. Counsel for Rose Tedesco contended that there was no immunity of the said Sam Tedesco from arrest on the charge of non-support, for the reason that the provisions of the Act of 1941, supra, had not been complied with prior to the appearance of Sam Tedesco in court. During the discussion at bar, the district attorney was sent for, in order that it might be ascertained just what steps had been taken by him in order to secure the attendance of Sam Tedesco in court. After the arrival of the district attorney in the court room, a remark was made by one of the counsel for Rose Tedesco, to the effect that defendant, Sam Tedesco, was willing to contribute support for his two children. The defendant was then sentenced by the court to pay for the support of his two children the sum of $15 per week, and released on parole upon giving his own bond (containing a warrant of attorney to confess judgment) in the sum of $500. A few days after this order had been made, the defendant's attorney, who had not been in court at the time the order of support was made, interviewed the sentencing judge and contended that his client had an immunity from arrest at the time he had been prosecuted on the nonsupport charge. After some discussion it was decided that defendant's attorney should present a petition to court to the end that it might be definitely settled. On January 16, 1945, the defendant presented his petition, and on the averments therein set forth, prayed that the court make an order vacating the sentence and order of support, and annulling the bond given by the defendant for support, and directing that Theresa Janflone (mother of

Rose Tedesco, and the person to whom the payments for support were to be made) make restitution of the moneys that had been paid to her under this order of support. Upon the presentation of this petition, the court granted a rule on Theresa Janflone, upon the Commonwealth, and upon Rose Tedesco to show cause if any they had why the sentence and order made by the court on November 15, 1944, should not be vacated. No answer was filed to this rule by Theresa Janflone or by the district attorney on behalf of the Commonwealth. However, on February 5, 1945, an answer was presented to the court by Rose Tedesco which answer was directed to be filed, and the case placed on the next argument list.

The case was argued at the current argument court by counsel for Rose Tedesco and the attorney of Sam Tedesco, and briefs were submitted. As stated before, counsel for the defendant contends that his client was immune from prosecution under the provisions of the Act of 1941, supra. This Act of 1941 (P. L. 147) is entitled:

*"An act*

Relating to criminal procedure, providing for the securing of attendance of witnesses from within or without the State in criminal cases, and making uniform the law in reference thereto."

The act provides that it may be cited as the "Uniform Act to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings".

Section 5 of the act provides as follows:

"This act shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of the states which enact it."

Section 1 of the act contains certain "definitions", two of which are as follows:

"The word 'witness' as used in this act shall include a person whose testimony is desired in any proceeding

or investigation by a grand jury or in a criminal action, prosecution or proceeding. . . .

"The word 'summons' shall include a subpœna, order *or other notice* requiring the appearance of a witness." (Italics supplied.)

This act deals with the matter of taking persons *out* of this State to be called as witnesses in proceedings in the courts of *other* States, and also with the subject of bringing witnesses *into* this State from *other* States.

In the third section it provides that if a person in any other State which has made provision for commanding persons within its borders to attend and testify in criminal prosecutions in this State, is a material witness in a prosecution pending in this State, a judge of the court of this State may issue a certificate under the seal of the court stating those facts and specifying the number of days the witness will be required. It further provides that the certificate so issued by such court may recommend that the witness be taken into immediate custody and delivered to an officer of this State to assure his attendance here, and it further provides that a certificate so issued shall be presented to a judge of the court of record in the county in which the witness is found.

The fourth section of the act provides that if a person comes into this State "in obedience to a summons directing him to attend and testify in this State he shall not while in this State pursuant to such summons be subject to arrest or the service of process, civil or criminal, in connection with matters which arose before his entrance into this State under the summons".

In the case at bar, no proceedings were initiated under section 3 of the Act of 1941 to get from this court a certificate as provided for in section 3 of that act. Defendant's counsel contends that his client was immune from arrest on the wording of the letter written to the defendant by the district attorney, and the message delivered to the defendant by Private Marm

of the Pennsylvania State police, acting under the direction of the district attorney's office. He contends that the language of the district attorney's letter, supplemented by the message delivered to him by Private Marm, constituted a "summons" within the meaning of the Act of 1941, as that word is defined in that act. He argues that the letter of the district attorney constituted an "order or other notice requiring the appearance of a witness" within the definition of "summons" as contained in section 1 of the Act of 1941. We believe that his contention in this matter is correct and that his reasoning in support of his argument is sound and logical. The district attorney is the prosecuting officer of the county upon whom devolves the duties of conducting prosecutions in all criminal cases begun within the county. It is his duty to prepare bills of indictment, lay the same before the grand jury and conduct the hearings in those cases before the grand jury. It is his duty to prepare all such cases for presentation to the grand jury and for trial, in the event that the grand jury returns true bills. One of his incidental duties is, of course, to ascertain the names and the addresses of witnesses material to the prosecution and to take whatever steps are necessary to enforce the attendance in court here of all such witnesses. In order to secure the attendance of defendant in this case for the trial of the case of the Commonwealth against Rose Tedesco, the district attorney could have followed the procedure outlined in section 3 of the Act of 1941. That course would have involved some additional cost (which might have been considerable) in connection with the presentation of his application to this court and the hearing on the court's certificate in that court of New Jersey where defendant was then located. Having given to defendant a written "order or other notice" requiring defendant's attendance here and having learned through Private Marm that the defendant would attend as a witness in the case against Rose

Tedesco, the district attorney naturally concluded that the institution of a proceeding under the third section of the act would be unnecessary. In compliance with the "order or other notice" from the district attorney, defendant in this case did come to Washington for the purpose of attending as a witness in the prosecution against Rose Tedesco and reached the City of Washington on November 14, 1944. On November 15, 1944, when the trial of the case against Rose Tedesco was resumed, the defendant, Sam Tedesco, was in court but, as it later developed, was there in the custody of an officer who had arrested him on a warrant issued the same day by John F. Carmichael, alderman. Immediately after Rose Tedesco had withdrawn her plea and the time of her sentence had been fixed for November 20, 1944, Sam Tedesco was called to the bar and the matters before referred to occurred.

Sam Tedesco had, at that time, an attorney, Francis H. Patrono, Esquire, who had acted for defendant in other matters. Mr. Patrono was out of town that day and when the trial judge asked defendant whether he had counsel, the assistant district attorney, Mr. Andrew W. Cummins, stated that he would look after defendant's interest. Defendant was then sentenced to pay the costs of prosecution and to pay to Rose Tedesco for the support of her two children the sum of $15 per week, and was released upon giving his own bond to comply with the order of the court. Subsequently, defendant's personal attorney, on several occasions, discussed this matter with the trial judge, and on January 16, 1945, presented a petition, before referred to.

In the brief submitted by counsel for Rose Tedesco, it is contended that:

1. Under the Act of 1941, supra, "some legal writ" must be issued and that the letter of the district attorney before referred to, could not be a substitute for the legal process contemplated by the act.

2. That even if the letter of the district attorney could be construed as a sufficient compliance with the Act of 1941, then any alleged immunity could be waived by the defendant.

3. That immunity could not be held to apply to a criminal offense committed *after* the defendant came within the jurisdiction of the court.

The Act of 1941, supra, is one of the uniform acts prepared by the commission to secure uniform state enactments on subjects involving interstate relations. Our Act of 1941, supra, is similar to, and substantially the same as, an act approved by the State of New Jersey and effective April 28, 1941 (L. 1934, c. 88; N. J. S. A. 2:97-27 to 2:97-33). Thirty-seven States of the Union have already adopted this act, and although the language in all of them is not exactly the same, the substance of these acts are substantially the same as that of our Act of 1941.

.. The question involved in this case has not, so far as we have been able to find, been passed upon by any of the Pennsylvania courts, nor have we found any case from any of the other States that have adopted this statute, which determines the same question involved in this case. The purpose of the statute is to secure the attendance of witnesses in proceedings in courts where their presence is required. Immunity under that statute is not given for the benefit of the witnesses whose attendance is needed but is granted so that the business of the court may be expedited and rendered more effective. The immunity provided for in that statute is a matter of public policy and is a part of a statutory system to secure the attendance here of witnesses who are residents of other States. Having that purpose in view, we should construe the act in this respect to carry out the purpose for which the legislation was adopted. Before the passage of this act, under the common law and by reason of the lack

of any statutory provisions covering the subject, a nonresident witness could not be brought into this State by compulsion to testify in civil cases. The statute was passed for the purpose, inter alia, of securing the attendance of nonresidents as witnesses in criminal cases through the assistance, if necessary, of a court of the State of his residence, and if his attendance was ordered by such foreign court that order could be made effective by delivering the body of such nonresident witness into the custody of an officer whose duty it would be to bring such witness into the court of this State, and subsequently return him to his place of residence.

We hold that defendant, Sam Tedesco, in coming to Washington to attend court in the case of the Commonwealth against Rose Tedesco, acted "in obedience to a summons directing him to attend and testify" within the meaning of the word "summons" as the same is defined in the Act of June 23, 1941, supra, and was, therefore, immune from arrest in connection with matters which arose before his entrance into this State under the summons.

This leaves one matter undisposed of, and that is the point raised by counsel for Rose Tedesco that desertion and nonsupport is "a continuing offense" and that even though defendant might have been immune from arrest for any desertion or nonsupport that had occurred prior to his coming into Washington County, nevertheless, he was guilty of a separate offense of desertion and nonsupport for each day that he remained in Washington County after the date of his arrival and, therefore, is not immune from prosecution and arrest in this case. We are not impressed with this argument and regard it as specious and fallacious. It is not necessary, however, to enter into an extended discussion regarding this matter in view of the state of the record in the case. At the time of the oral argu-

ment, counsel for Rose Tedesco contended that Sam Tedesco, the defendant in this case, was guilty of desertion and nonsupport on November 15, 1944 (the day after he arrived in Washington) and that he would have been guilty of another offense of desertion and nonsupport on November 16, if he had remained in Washington County, and would also have been guilty of another offense for each day thereafter that he remained in Washington County, and that as such offenses occurred after he reached Washington County, in response to the "summons" that had been served upon him, he was not immune from prosecution.

Counsel for Rose Tedesco, in support of his contention that defendant was not immune from arrest, cites three cases as follows:

1. Commonwealth v. Husinka, 127 Pa. Superior Ct. 360, in which case defendant presented to the lower court a petition praying for a rule to show cause why a rehearing should not be granted to review an order of support, the reasons alleged being that defendant was not a resident of Westmoreland County (in which the prosecution was begun) and that the prosecutrix and the defendant's children were residents of the State of Michigan. Judge Copeland of Westmoreland County, in discharging a rule for a rehearing, quoted the Act of April 13, 1867, P. L. 78, and said that that act has nothing whatever to do with the Poor Laws, but is an act for the *relief* of a deserted wife and (or) children. He refers to Commonwealth ex rel v. Shetzline, 84 Pa. Superior Ct. 100, and other Superior Court cases, holding that the only requirement of the Act of 1867 insofar as it relates to defendant is that defendant "be within the Commonwealth."

2. Commonwealth ex rel. Jamison v. Jamison, 149 Pa. Superior Ct. 504, which counsel cites in support of his proposition that "We further submit that an order unappealed from is res adjudicata as to all defenses

which might have been raised." In the Jamison case, the lower court had made an order of support and no appeal was taken from that order. Subsequenty, defendant's wife presented a petition for an increase in the amount of the support order. Defendant filed an answer and the lower court, after taking testimony, made an order increasing the amount payable by defendant. Defendant took an appeal to the Superior Court from this order, but the latter court affirmed the order of the lower court. In the Superior Court's opinion, Judge Rhodes, speaking with reference to the original order of support, says (p. 506) : "That order was res adjudicata as to all defenses which might have been raised at that time."

The present case is not one of attempting to invoke defenses that were available to defendant at the time the order of support was made. The question is as to the right of the court to make the order of support at the time it was entered and that question *was raised* at the time defendant was called before the bar to answer the charge of nonsupport. The prosecuting attorney himself raised the question as to defendant's immunity from arrest under the provisions of the Act of 1941, supra, and contended that defendant was immune from arrest. We do not see that Jamison v. Jamison is in point or controlling as against defendant, Sam Tedesco.

3. In Commonwealth ex rel. v. Barnes, 151 Pa. Superior Ct. 202, a petition was filed with the lower court praying for the vacation or reduction of an order of support previously entered. The petition was dismissed and on appeal to the Superior Court, the order of the lower court was affirmed in an opinion by Judge Rhodes.

Counsel for Rose Tedesco contends in his brief that the Barnes case, although authorizing a court to vacate an order of support, nevertheless holds that such power

of vacation or revocation only exists where the evidence shows "such permanent changes in conditions or circumstances as would justify a vacation of the existing order".

In the Barnes case, an order of support was made by the lower court but, upon appeal to the Superior Court, the order was modified and the amount required to be paid by defendant was reduced. Therefore, defendant presented a petition to the lower court to vacate or reduce the order because of a change in defendant's circumstances. In his opinion, Judge Rhodes used the language quoted above from counsel's brief, but he used it in connection with, and in view of, the situation then presented. Defendant had prayed for the revocation of a previous order of support and in considering that matter, Judge Rhodes said (p. 203) ·

"Orders of support are not final . . . but the burden rested upon appellant to show by competent evidence such permanent changes in conditions or circumstances as would justify a vacation or modification of the existing order."

We cannot subscribe to counsel's statement that the Barnes case is authority for the general proposition that a court cannot revoke or modify a previous order of support unless there have been "such permanent changes in conditions or circumstances as would justify a vacation of the existing order."

That a court has a power to modify, vacate, reduce or increase an order of support previously made is decided by Commonwealth ex rel. v. Barnes, supra, cited by counsel for Rose Tedesco in his brief. In the opinion of the Superior Court in that case, Judge Rhodes says (syllabus) :

"Orders of support are not final inasmuch as they may be increased, reduced, or vacated where the financial condition of the parties changes, or where other proper reasons are assigned. . . .

"Good faith in the application for reduction and a permanent change in circumstances are necessary to warrant a *reduction* of a support order." (Italics supplied.)

The question of "continuing offenses" has been considered and discussed in many cases throughout the United States. We have found no case on that subject exactly in point so far as the questions involved in this case are concerned. Instances of definitions of "continuing offense" are cited in 9 Words and Phrases (Perm. Ed.) beginning on page 179. On page 180 of that work it is said:

"A 'continuing offense' is a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy."

A number of cases are cited in support of that definition, among them being Estep v. State: 11 Okla. Cr. 103, 143 P. 64, 66.

In State v. Hinson, 209 N. C. 187, 183 S. E. 397, Justice Clarkson, in his opinion, says (p. 190):

"Wharton defines a continuing offense as a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy: Crim. Pleading, 474. It is an offense which continues day by day."

Justice Clarkson quotes from the North Carolina statute regarding abandonment by a husband of wife and children, and also quotes the amendment to that section of the North Carolina Code which amendment was as follows (p. 190):

" 'Provided, that the abandonment of children by the father shall constitute a continuing offense, and shall not be barred by any statute of limitations until the youngest living child shall arrive at the age of eighteen years.' "

In that case, Judge Clarkson held that a prior conviction for abandonment and nonsupport of an infant child does not bar the subsequent prosecution for the same offense, since the offense was a "continuing offense" within the statute. In his opinion, Justice Clarkson also says (p. 190):

" 'The statute in express terms constitutes the abandonment of children by the father a continuing offense. The prosecution of an offense of this nature is a bar to a subsequent prosecution for the same offense charged to have been committed at any time before the institution of the first prosecution, but it is not a bar to a subsequent prosecution for continuing the offense thereafter, as this is a new violation of the law. . . . This general principle is fortified by the distinct provision that the statute of limitations shall not bar prosecution until the youngest living child shall arrive at the age of eighteen years.' "

The Act of April 13, 1867, P. L. 78, merely provided a remedy whereby any husband or father, "being within the limits of this Commonwealth", could be ordered by the Quarter Sessions court to support his wife and/or children. It did not, however, make the nonsupport of such persons a criminal offense. Neither is there anything in the Act of 1867 similar to the language of the North Carolina case in State v. Hinson, supra, in making the offense of failure to support wife and children, "a continuing offense".

Continuing offense has been considered in several cases in Pennsylvania as shown in Sadler's Criminal Procedure, 2 Ed. §63. In section 63, reference is made to several cases holding that the venue of the crime of conspiracy is the county in which the unlawful combination is made; but if there be any overt act committed in another county whose court is trying the offense, this will be evidence that the conspiracy was

there renewed, and will be sufficient to give juris-
diction.

In the same work, section 65, two cases are cited
holding that embezzlement involves a continuous taking
and might spread over an extended period of time and
into several jurisdictions before it was detected, and
that defendant might, therefore, be tried in any
county where any part of the embezzlement was com-
mitted.

Counsel has not called our attention to any Penn-
sylvania case ruling on the precise question involved
in this case, insofar as the question of a "continuing
offense" is concerned.

When we come to examine the information made
against defendant in this case, we discover what we
believe is decisive of the question. As said before, the
information charging nonsupport was made on No-
vember 15, 1944, and it charged that defendant Sam
Tedesco, "on or about September 1, 1943, and to the
present date", deserted, neglected and refused to sup-
port and maintain his wife and two minor children.
By the very terms of the information, prosecutrix cov-
ered the whole period of time from September 1, 1943,
down to, and including, November 15, 1944. If we
were impressed with counsel's argument that an
offense was committed by defendant on November 15,
1944, and that he could be prosecuted for that offense,
regardless of the question of his immunity for offenses
committed before he came into Pennsylvania, we are
confronted with the fact that the information against
him included an offense for which he was immune
from arrest, and as there was but one information
against him, we are of the opinion that the immunity
of arrest given to him by the Act of 1941 applied, and
that he was improperly arrested and that the court
should have imposed no order of support upon him.
We are of the opinion that defendant's petition insofar

as it prayed for a vacation of the order of support should be granted.

We doubt, however, the propriety of directing a repayment to defendant of the amount of money he has paid for the support of his children under the order made on November 15, 1944. That order directed him to pay to his wife for the support of his children, certain sums of money, and by arrangements made at the time, that money was to be paid to Theresa Janflone, the grandmother of defendant's two children, and with whom the children were then living. There is no evidence before the court to indicate that the moneys so paid by defendant for the support of his children, were not used by Mrs. Janflone for that purpose. We believe that it would work a hardship on Mrs. Janflone to force her to repay to defendant the amount that has been paid to her for the support of defendant's children, and which she undoubtedly expended for that purpose, and we, therefore, refuse to make such an order.

We are inclined to think that any order of relief granted to defendant should not be carried to the point of directing the county to repay the costs that have already been paid by defendant under the order of support heretofore made.

We, therefore, make the following

### Order

And now, April 23, 1945, the order of court heretofore, to wit, on November 15, 1944, made, directing defendant to pay the costs of prosecution in the sum of $24.50 and to pay to Rose Tedesco, wife of defendant, the sum of $15 per week for the support of her two children, and to give security for compliance with the order by giving his own bond in the sum of $500, is hereby revoked, this revocation to be effective as of this date, and defendant is hereby discharged from the order of parole under which he was released on No-

vember 15, 1944, and is discharged from any obligation under the bond given by him in accordance with the order of November 15, 1944.

It is further ordered and directed that if a judgment was entered on the bond given by defendant on November 15, 1944, the judgment shall be satisfied of record. Defendant is also relieved from the payment of any presently unpaid portion of the costs accrued in the case.